IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**VINCENT J. DESANTIS**
702 Hampton Lane
Towson, MD 21286

    *Plaintiff*

v.

**MAYOR AND CITY COUNSEL OF BALTIMORE**
<u>Serve:</u>  Department of Law
        City Hall, Suite 101
        100 North Holliday Street
        Baltimore, MD 21202

<u>Serve:</u>  Resident Agent
        Dana P. Moore
        Acting City Solicitor
        City Hall, Suite 101
        100 North Holliday Street
        Baltimore, MD 21202

and

**CHANNA WILLIAMS**
in her individual and official capacity.

and

**TROY BROGDEN**
in his individual and official capacity.

    *Defendants*

Case No. _____

**COMPLAINT AND JURY DEMAND**

    COMES NOW PLAINTIFF, Vincent J. DeSantis, by and through undersigned counsel, and files this Complaint, and sues the above referenced Defendants, and as cause states:

1

## NATURE OF ACTION

1. This is an action by Plaintiff, Vincent DeSantis (hereafter "Mr. DeSantis" or "Plaintiff"), to redress actions taken by the Baltimore City Department of Public Works (DPW), which is a Municipal Agency of Baltimore City; Channa Williams in her individual and official capacity; and Troy Brogden in his individual and official capacity (hereafter "Defendants" collectively and/or individually), based upon discrimination pursuant to the Americans with Disabilities Act, as Amended, 42 USC §12101 including Titles I and V; Title VII of the Civil Rights Act of 1964, as amended 42 USC § 2000e; 42 USC § 1981; 42 USC § 1983; the Age Discrimination in Employment Act of 1967 and Maryland State Government Article § 20-601, et. seq. Plaintiff brings this action to correct unlawful employment practices as a result of discrimination on the bases of reprisal, disability, race, sex, and age.

## PARTIES

2. Plaintiff Vincent DeSantis resides at 702 Hampton Lane, Towson, MD 21286.

3. Defendant, the Mayor & City Council of Baltimore (hereinafter referred to as "the City"), at all times relevant hereto, is a Maryland Municipal Corporation responsible for Baltimore City's Department of Public Works (DPW).

4. Channa Williams was previously employed with the DPW and was the Plaintiff's supervisor at the relevant times stated herein. Defendant Channa Williams is sued in her individual and official capacity herein.

5. Troy Brogden is employed by DPW as a Chief of the Fiscal Management Division and was in Plaintiff's chain of command at the relevant times stated herein. Defendant Troy Brogden is sued in his individual and official capacity herein.

## JURISDICTION AND VENUE

6. Jurisdiction in this case is based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). Venue in this case is based upon 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1391, as a substantial part of the events, omissions or incidents which give rise to this case occurred in Maryland, in this judicial district.

7. Plaintiff has timely complied with any and all conditions precedent and jurisdictional prerequisites to filing suit.

8. Plaintiff exhausted any and all administrative remedies, including filing a charge of discrimination with the MCCR before filing suit.

9. Plaintiff received a Notice of Right to Sue with regard to claims under the Age Discrimination in Employment Act (ADEA) on August 6, 2020.

10. Plaintiff received a Notice of Right to Sue with regard to Title VII and ADAAA claims on August 28, 2020.

## FACTS

11. Mr. DeSantis began his employment at Baltimore City DPW headquarters on or about August 1995.

12. At all relevant times to this matter, Mr. DeSantis was employed in DPW's Fiscal Management Division as an Accountant Supervisor. Specifically, Mr. DeSantis maintained oversight of financial activities pertaining to a billion dollar Capital Program.

13. At all relevant times to this matter, Mr. DeSantis's supervisors were Channa Williams, Operations Manager, and Troy Brogden, Chief Financial Officer.

14. Mr. DeSantis is a Caucasian, white male, over the age of 40.

15. Ms. Williams is an African-American, black, female.

16. Mr. Brogden is an African-American, black, male.

17. Mr. DeSantis possesses a physical and mental impairment that substantially limits his ability to perform one or more major life activities. Mr. DeSantis suffers from Lyme disease. Mr. DeSantis was diagnosed with Lyme disease in 2012.

18. Lyme disease causes symptoms, such as mental and physical difficulties that include memory loss, confusion and severe joint pain. Based on these symptoms, Mr. DeSantis is unable to work longer than 8 hours in a day.

19. Defendants have been aware of Mr. DeSantis's disability since on or about January 1, 2017.

20. From on or about December 6, 2017 to the present, Ms. Williams and Mr. Brogden have continuously subjected Mr. DeSantis to racial, gender-based, age-based, disability-related, and retaliatory harassment.

21. On December 6, 2017, Mr. DeSantis signed in at 7:35 am and a few minutes later, Phyllis Edwards signed in over Mr. DeSantis's signature by writing her name in his line space.

22. Mr. Brogden aggressively approached Mr. DeSantis in front of another coworker, Shari Montgomery, and demanded that he sign-in. When Mr. DeSantis informed Mr. Brogden that he had signed in at 7:35am, Mr. Brogden became unprofessional and aggressive by standing toe to toe with Mr. DeSantis while making humiliating accusations in the presence of co-workers.

23. Shortly thereafter, Mr. DeSantis filed a complaint of harassment with the City.

24. On December 28, 2017, Mr. DeSantis did not show up for work because of a previously scheduled doctor's appointment that he had discussed with Ms. Williams. Mr. DeSantis received an email from Ms. Williams asking where he was. Mr. DeSantis responded to Ms. Williams that

he forwarded her an email on December 26, 2017, requesting additional time off. Mr. DeSantis subsequently submitted a time slip with the leave attached.

25. On January 10, 2018, Ms. Williams held a meeting to discuss the December 28, 2017 leave matter with Mr. DeSantis and presented him with a five (5) day suspension questioning the authenticity of the leave slip that he forwarded her.

26. Mr. DeSantis filed a grievance on January 21, 2018, regarding the aforementioned 5 day suspension. On February 21, 2018, a step 2 meeting was held for Mr. DeSantis to appeal the five day suspension.

27. On February 22, 2018, Mr. DeSantis was transferred to 8201 Eastern Boulevard, the Administrative Office, where he worked for 14 months because he was continually being harassed by Ms. Williams.

28. On March 20, 2018, Baltimore County Public Schools dismissed early and cancelled all after school activities. Despite other employees outside of his protected class(es) being able to leave early to pick-up their children with no consequence, Ms. Williams issued a 1-day suspension to Mr. DeSantis for leaving early, even after he requested leave for this emergency.

29. On April 27, 2018, Mr. DeSantis filed a complaint with the Maryland Commission on Civil Rights that alleged discrimination as a continuing action based on race, sex, retaliation, and disability. In this Complaint, Mr. DeSantis named Mr. Brogden and Ms. Williams as responsible management officials.

30. Mr. DeSantis was made aware of a meeting by Ms. Williams to take place on May 8, 2018, and agreed to attend the meeting via telephone conference. Ms. Williams agreed that Mr. DeSantis would attend the meeting via teleconference because she determined that his attendance was required.

31. Mr. DeSantis attended the meeting via teleconference.

32. On June 4, 2018, Ms. Williams issued a written warning to Mr. DeSantis for insubordination and behavior unbecoming of a city employee based on her allegation that Mr. DeSantis did not attend the May 8, 2018 meeting.

33. In response, Mr. DeSantis received an email from FreeConferenceCall.com, and produced the same to Ms. Williams, that demonstrated that he was dialed in for 38 minutes on the conference line for the meeting on May 8, 2018.

34. On May 15, 2018, Mr. DeSantis participated in a step 2 meeting to appeal the 1-day suspension that he received for leaving early on March 20, 2018. Mr. Brogden, via a decision issued on May 18, 2018, upheld the suspension.

35. On April 12, 2019, Mr. Brogden ordered Mr. DeSantis to report downtown on April 15, 2019; subsequently, Mr. DeSantis was on scheduled leave from April 17 thru April 28, 2019. During that time, Mr. DeSantis was contacted by ADA Coordinator for DPW, Mr. Phillip Cherry (Mr. Cherry). Mr. Cherry emailed Mr. DeSantis to create a work-accommodation plan to list reasonable duties that Mr. DeSantis could perform within an 8-hour work day.

36. Upon Mr. DeSantis's return to the office from leave, he was immediately harassed by Ms. Williams to review a revised Position Description (PD) that he was assigned in August 2018, to determine any additional training or support needed to perform as a fiscal supervisor. Given his ongoing disability issues and the timing of this request, Mr. Cherry responded directly to Ms. Williams and Mr. Brogden, asking that "any actions is held back as a temporary accommodation until Mr. DeSantis has had the chance to discuss his ADA Accommodations during his assessment[,]" which Mr. Cherry scheduled for May 1, 2019.

37. Despite Mr. Cherry's request, on April 30, 2019 at 3:26 pm, Mr. DeSantis was notified by Ms. Williams that a meeting would take place in the CFO's office at 3:30 pm to discuss work-related issues and deliverables. Mr. DeSantis entered the CFO's office at 3:30 pm for his April 30th meeting; however, he was told that the meeting was being moved to May 1, 2019.

38. On May 1, 2019, during the scheduled meeting, Mr. Thomas Pointer (Mr. Pointer) gave Mr. DeSantis a written warning for not responding to Ms. Williams's PD instructions. Mr. DeSantis attempted to explain that he did not respond because he was out on leave and was following the instructions given by Mr. Cherry. However, Ms. Williams interrupted him and brusquely stated that the ADA Coordinator's email was open for interpretation and his statement was not intended for Mr. DeSantis to not address the PD by the due date.

39. During the course of the meeting, Ms. Williams continued to talk over Mr. DeSantis and even began screaming and lunged at Mr. DeSantis when he took out his phone and suggested taping the meeting. Mr. Pointer stepped in and restrained Ms. Williams from attacking Mr. DeSantis; subsequently, Mr. Pointer asked Ms. Williams to leave the office.

40. After leaving temporarily, Ms. Williams came back into the office shortly thereafter and was again hostile toward Mr. DeSantis. Mr. DeSantis mentioned to Mr. Pointer that his interaction with Ms. Williams in this meeting was very juvenile, much like a conversation with his daughter when she attempts to speak over him because she does not like his responses. At that time, Ms. Williams again physically came after Mr. DeSantis and had to be restrained by Mr. Pointer.

41. Mr. Pointer had to repeatedly ask Ms. Williams to leave the office; however, she continued to return with the explicit purpose of cutting off Mr. DeSantis's responses. Ultimately,

Ms. Williams returned to the office three (3) times in a short time span. During one of these times, Mr. DeSantis stated "You can't walk into this office like that. This is not your office."

42. Ms. Williams left the office again and Mr. DeSantis got up to lock the door to the office. Upon seeing this, Mr. Pointer instructed Mr. DeSantis to unlock the door. Ms. Williams was outside of the door as Mr. DeSantis attempted to unlock it. Ms. Williams continued to be in a rage and attempted to push the door open. Mr. DeSantis opened the door; however, given the force that Ms. Williams was pushing the door and Mr. DeSantis's proximity to the door, the door swung back toward Ms. Williams, though, it never struck Ms. Williams.

43. At this time, Mr. DeSantis returned to his desk, but Ms. Williams and Mr. Pointer continued to speak behind closed doors.

44. Mr. DeSantis was issued a Pre-Termination letter on May 21, 2019, based on an alleged violation of the Workplace Violence Policy as a result of the events that occurred during the meeting on May 1, 2019.

45. Mr. DeSantis provided an oral response at a Termination meeting on May 31, 2019.

46. The Agency sustained Mr. DeSantis's removal on June 3, 2019.

47. Mr. DeSantis appealed his removal to the Civil Service Commission and was a party to a hearing conducted before the Hearing Officer, Andrea K. Thompson, Esq., on September 5, 2019.

48. The Hearing Officer issued a Recommendation to the Civil Service Commission, dated September 20, 2019. In that Recommendation, the Hearing Officer stated that the Baltimore City's termination was not for just cause, should be reversed, and that Mr. DeSantis should be reinstated with retroactive pay.

49. Baltimore City filed an Exception, dated October 7, 2019.

50. The Civil Service Commission issued a final decision dated November 26, 2019. In that final decision, Baltimore City failed to concur with the recommendation of the Hearing Officer that the termination was not for just cause, should be reversed, and that Mr. DeSantis should be reinstated with retroactive pay. Baltimore City declined to return Appellant to employment with DPW.

51. Mr. DeSantis submitted a timely Request for Reconsideration, dated December 23, 2019, in response to the Civil Service Commission's final decision.

52. On January 16, 2020, the Chief Hearing Officer, Sarah Miller Espinosa, issued a Recommendation to the City of Baltimore Civil Service Commission in response to the Request for Reconsideration. The Recommendation found that there was an irregularity in the exception process and recommended that Mr. DeSantis's Request for Reconsideration be granted and that the Civil Service Commission grant Mr. DeSantis the opportunity to respond to Baltimore City's Exception prior to reconsidering its final decision.

53. Mr. DeSantis was granted ten (10) days to file a Response to the City's Exception, and timely filed the same on January 24, 2020.

54. On March 5, 2020, the Civil Service Commission issued a Notice in which it denied the Request for Reconsideration and upheld its November 26, 2019 final decision.

## Count I
### Race, Gender, Retaliation Discrimination/Harassment/Hostile Work Environment
### (Title VII of the Civil Rights Act of 1964 – race, gender and retaliation)

55. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

56. Defendant discriminated against the Plaintiff in violation of Section 703(a) of Title VII, 42 U.S.C. §2000e-2(a), by subjecting him to discrimination and creating a hostile work environment because of his race and gender, and failing to take proper corrective action.

57. The offensive conduct described in the preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of employment for the Plaintiff.

58. As a supervisor, Ms. Williams's actions constitute the actions of the Defendant for which they are directly liable.

59. As a supervisor, Mr. Brogden's actions constitute the actions of the Defendant for which they are directly liable.

60. Defendant knew of, or in the exercise of reasonable care should have known of, the hostile or offensive work environment suffered by the Plaintiff because of his sex.

61. Plaintiff repeatedly complained to management about the hostile or offensive work environment, but Defendant failed to take timely preventative or remedial actions.

62. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise has adversely affected his employment status because of his race, disability and sex.

63. The unlawful employment practices complained of above were intentional.

64. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

65. In sum, Mr. DeSantis was exposed to disadvantageous terms or conditions of employment to which other employees were not exposed.

66. Plaintiff has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

## Count II
### Race, Gender, Retaliation Discrimination/Unlawful Termination
### (Title VII of the Civil Rights Act of 1964 – Retaliation)

67. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

68. Defendants' conduct as described in this Complaint constitutes discrimination on the basis of retaliation in violation of Title VII and its implementing regulations.

69. After requesting the reasonable accommodations and participating in the protected activities described in this Complaint, Defendants violated the law when it retaliated against Plaintiff, including but not limited to terminating him from his employment.

70. Defendants violated the law when it denied Mr. DeSantis's appeals of the decision of termination and failed to reappoint him, despite the Recommendation from Baltimore City's Civil Service Commission.

71. The Defendant City's Workplace Violence Policy as instituted and applied deprived Plaintiff of his fundamental right to due process and resulted in his unlawful termination.

72. The Defendant City repudiated its own Civil Service Commission's rules and disciplinary hearing procedures when it failed to implement the recommendation of the independent hearing officer.

73. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise has adversely affected his employment status because of reprisal.

74. The unlawful employment practices complained of above were intentional.

75. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

76. In sum, Mr. DeSantis was exposed to disadvantageous terms or conditions of employment to which other employees were not exposed.

77. Mr. DeSantis has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

**<u>Count III</u>**
**Disability Discrimination/Failure to Accommodate/Unlawful Termination**
**(Americans with Disabilities Act, as Amended – Title I)**

78. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

79. Mr. DeSantis is a qualified individual with a disability. He suffers from a physical or mental impairment that substantially limits him in major life activities, has a record of his impairment and/or was perceived as disabled.

80. Mr. DeSantis was able to perform the essential functions of his position with or without accommodation.

81. Defendants violated the law when it failed to provide reasonable accommodation to Mr. DeSantis without sufficient cause or basis and failed to engage in the interactive process.

82. Defendants' conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the ADAAA and its implementing regulations.

83. Defendants violated the law when it terminated Mr. DeSantis because of his disability and failed to reinstate him to his position.

84. The Defendant City's Workplace Violence Policy as instituted and applied deprived Plaintiff of his fundamental right to due process and resulted in his unlawful termination.

85. The Defendant City repudiated its own Civil Service Commission's rules and disciplinary hearing procedures when it failed to implement the recommendation of the independent hearing officer.

86. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise has adversely affected his employment status because of his disability.

87. The unlawful employment practices complained of above were intentional.

88. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

89. In sum, Mr. DeSantis, a qualified individual, was exposed to disadvantageous terms or conditions of employment to which non-disabled employees were not exposed.

90. As a result of Defendants' acts or omissions, Mr. DeSantis's medical conditions were exacerbated.

91. Mr. DeSantis has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendants' actions are ongoing.

### Count IV
**Disability Discrimination/Retaliation/Failure to Accommodate/Unlawful Termination
(Americans with Disabilities Act, as Amended – Title V)**

92. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

93. Mr. DeSantis is a qualified individual with a disability. He suffers from a physical or mental impairment that substantially limits him in major life activities, has a record of his impairment and/or was perceived as disabled.

94. Mr. DeSantis was able to perform the essential functions of his position with or without accommodation.

95. Defendants' conduct as described in this Complaint constitutes discrimination on the basis of disability in violation of the ADAAA and its implementing regulations.

96. After requesting the reasonable accommodations and participating in the protected activities described in this Complaint, Defendants violated the law when it retaliated against Plaintiff, including but not limited to terminating him from his employment.

97. Defendants violated the law when it denied Mr. DeSantis's appeals of the decision of termination and failed to reappoint him, despite the Recommendation to from Baltimore City's Civil Service Commission.

98. The Defendant City's Workplace Violence Policy as instituted and applied deprived Plaintiff of his fundamental right to due process and resulted in his unlawful termination.

99. The Defendant City repudiated its own Civil Service Commission's rules and disciplinary hearing procedures when it failed to implement the recommendation of the independent hearing officer.

100. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise has adversely affected his employment status because of his disability.

101. The unlawful employment practices complained of above were intentional.

102. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

103. In sum, Mr. DeSantis, a qualified individual, was exposed to disadvantageous terms or conditions of employment to which non-disabled employees were not exposed and was subjected to retaliation thereafter.

104. As a result of Defendants' acts or omissions, Mr. DeSantis's medical conditions were exacerbated.

105. Mr. DeSantis has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

## Count V
### (42 U.S.C. § 1981)

106. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

107. Defendants discriminated against the Plaintiff in violation of 42 USC § 1981, by subjecting him to discrimination because of his race.

108. As a supervisor, Ms. Williams's actions constitute the actions of the Defendant for which they are directly liable.

109. As a supervisor, Mr. Brogden's actions constitute the actions of the Defendant for which they are directly liable.

110. Defendants Williams and Brogden are liable in their individual and official capacities.

111. Defendants knew of, or in the exercise of reasonable care should have known of, the unlawful intentional discriminatory actions taken against Plaintiff because of his sex, race, and disability status.

112. Plaintiff repeatedly complained to management about the unlawful discrimination he suffered, but Defendants failed to take timely preventative or remedial actions. Furthermore, even if Plaintiff did not complain to Management, then Management would have been aware

because Mr. Brogden and Ms. Williams are supervisory officials and Management was vicariously on notice of the discriminatory acts.

113. The Defendant City's Workplace Violence Policy as instituted and applied deprived Plaintiff of his fundamental right to due process and resulted in his unlawful termination.

114. The Defendant City repudiated its own Civil Service Commission's rules and disciplinary hearing procedures when it failed to implement the recommendation of the independent hearing officer.

115. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise has adversely affected his employment status because of his race, sex and disability status.

116. The unlawful employment practices complained of above were intentional.

117. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

118. In sum, Mr. DeSantis was exposed to disadvantageous terms or conditions of employment to which other employees were not exposed.

119. Plaintiff has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

## Count VI
### (42 U.S.C. § 1983)

120. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

121. Defendant discriminated against the Plaintiff in violation of 42 USC § 1983, by subjecting him to discrimination because of his race.

122. As a supervisor, Ms. Williams's actions constitute the actions of the Defendant for which they are directly liable.

123. As a supervisor, Mr. Brogden's actions constitute the actions of the Defendant for which they are directly liable.

124. Defendants Williams and Brogden are liable in their individual and official capacities.

125. Defendants knew of, or in the exercise of reasonable care should have known of, the unlawful intentional discriminatory actions taken against Plaintiff because of his race.

126. Plaintiff repeatedly complained to Defendants about the unlawful discrimination he suffered, but Defendants failed to take timely preventative or remedial actions.

127. The City's Workplace Violence Policy as instituted and applied deprived Plaintiff of his fundamental right to due process and resulted in his unlawful termination.

128. The City repudiated its own Civil Service Commission's rules and disciplinary hearing procedures when it failed to implement the recommendation of the independent hearing officer.

129. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise has adversely affected his employment status because of his race.

130. The unlawful employment practices complained of above were intentional.

131. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

132. In sum, Mr. DeSantis was exposed to disadvantageous terms or conditions of employment to which other employees were not exposed.

133. Plaintiff has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

## Count VII
### (Maryland State Government Article § 20-601 – Disability, Race, Gender, Age Discrimination and Retaliation)

134. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

135. The state claims asserted in this Count are so related to the above-stated claims that they form part of the same case or controversy, and arise from the same set or common nucleus of operative facts.

136. Defendants' conduct as described in this Complaint constitutes discrimination on the basis of disability, race, gender, age and retaliation in violation of the Maryland State Government Article § 20-601, et seq., and its implementing regulations.

137. After requesting the reasonable accommodations and participating in the protected activities described in this Complaint, Defendants violated the law when it retaliated against Plaintiff, including but not limited to terminating him from his employment.

138. Defendants violated the law when it denied Mr. DeSantis's appeals of the decision of termination and failed to reappoint him, despite the Recommendation from Baltimore City's Civil Service Commission.

139. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise has adversely affected his employment status because of his race, gender, disability and as reprisal.

140. The unlawful employment practices complained of above were intentional.

141. The unlawful employment practices complained of above were done with malice or with reckless indifference to the protected rights of the Plaintiff.

142. In sum, Mr. DeSantis was exposed to disadvantageous terms or conditions of employment to which other employees were not exposed and was subjected to retaliation thereafter.

143. Mr. DeSantis has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

**Count VIII**
**(Age Discrimination in Employment Act of 1967 – Age Discrimination/Harassment/Hostile Work Environment)**

144. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

145. Defendant's conduct as described in this Complaint constitutes discrimination on the bases of age in violation of the Age Discrimination in Employment Act of 1967, and its implementing regulations.

146. Defendant violated the law when it subjected Mr. DeSantis to harassment and discrimination with regard to discipline, heightened scrutiny, nitpicking behavior, and termination.

147. Defendant treated younger employees and those under the age of 40 more favorably than Plaintiff.

148. The effect of the practices complained of above has been to deprive the Plaintiff of equal employment opportunities and otherwise has adversely affected his employment status because of his age.

149. The unlawful employment practices complained of above were intentional.

150. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

151. In sum, Mr. DeSantis was exposed to disadvantageous terms or conditions of employment to which younger employees and those under the age of 40 were not exposed.

152. As a result of the intolerable working conditions and Defendant's actions, Mr. DeSantis has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorneys' fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory, equitable, and injunctive relief. Plaintiff further specifically demands prospective injunctive relief in the form of an order of reinstatement to his position and an order proscribing the unlawful conduct described in this Complaint.

        Respectfully submitted,

        SNIDER & ASSOCIATES, LLC

         /s/   **JASON I. WEISBROT**
        Jason I. Weisbrot, Esq. (Bar No. 28074)
        Snider & Associates, LLC
        600 Reisterstown Road, Seventh Floor
        Baltimore, Maryland 21208
        410.653.9060 (T)
        410.653.9061 (F)
        jason@sniderlaw.com

        *Counsel for Plaintiff*